AO 106 (Rev. 04/10) Application for a Search Warrant

**FILED**
UNITED STATES DISTRICT COURT
ALBUQUERQUE, NEW MEXICO

# UNITED STATES DISTRICT COURT
for the
District of New Mexico

JAN 0 8 2018 

MATTHEW J. DYKMAN
CLERK

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*

A cellular Telephone
See Attachment A

Case No. 18 MR 11

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A

located in the _____ District of _____ New Mexico _____, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☑ evidence of a crime;
☐ contraband, fruits of crime, or other items illegally possessed;
☐ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 USC 841 | Distribution of a Controlled Substance |
| 21 USC 846 | Conspiracy |

The application is based on these facts:

☑ Continued on the attached sheet.
☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
Applicant's signature

Gregory Nienow, Special Agent
Printed name and title

Sworn to before me and signed in my presence.

Date: 01/08/2018

_____
Judge's signature

City and state: Albquerque, New Mexico

Jerry Ritter United States Magistrate Judge
Printed name and title

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF A CELLULAR TELEPHONE IDENTIFIED AS AN "LG" MODEL, BLACK IN COLOR, CONTAINED WITHIN A PURPLE & BLACK PHONE CASE, & SEIZED ON DECEMBER 20, 2017, FROM KEVIN MADRID. | Case No. _____ |

**AFFIDAVIT IN SUPPORT OF AN APPLICATION
UNDER RULE 41 FOR A WARRANT TO SEARCH**

I, Special Agent Gregory Nienow, of the Drug Enforcement Administration (DEA), United States Department of Justice, being first duly sworn, hereby state as follows:

**INTRODUCTION AND INVESTIGATOR'S BACKGROUND**

1. I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property—an electronic device—and the extraction from that property of electronically stored information described in Attachment B.

2. I am a Special Agent (SA) of the Drug Enforcement Administration (DEA), United States Department of Justice. I have been so employed since March of 2012. As such, I am a law enforcement officer of the United States within the meaning of 18 U.S.C. § 2510(7), and am empowered by law to conduct investigations and to make arrests for offenses enumerated in 18 U.S.C. § 2516. I am currently assigned to the Albuquerque District Office under the El Paso Field Division. Prior to my employment with DEA, I was a Police Officer and Narcotics Detective with the Richmond City Police Department in Virginia for approximately six years.

3. During my employment with DEA, I have participated in numerous investigations relating to the distribution of controlled substances, including heroin, cocaine, marijuana, prescription pills, and other substances, in violation of the federal drug laws, including Title 21, United States Code, Sections 841 and 846. I have received training in the field of narcotics enforcement and investigations. My experience as a Special Agent includes, but is not limited to, conducting surveillance, interviewing witnesses, writing affidavits for and executing search warrants, working with undercover agents and informants, and working as an undercover agent. I am familiar with the habits, methods, routines, practices, and procedures commonly employed by persons engaged in the trafficking of illegal drugs. Through my training, education, and experience, I have become familiar with the manner in which illegal drugs are transported, stored, and distributed, and with the methods of payment for such drugs. I have also participated in, and been the affiant for Title III investigations. From my experience, I know that it is essential that drug trafficking organizations maintain good communication to coordinate the transportation of drugs and to facilitate financial transactions stemming from the sale of drugs. I also have experience in analyzing and interpreting drug codes and cryptic dialogue used by drug traffickers.

4. This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

## TECHNICAL TERMS

5. Based on my training and experience, I use the following technical terms to convey the following meanings:

   a. Wireless telephone: A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication

through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

b. Digital camera: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

3

c. Portable media player: A portable media player (or "MP3 Player" or "iPod") is a handheld digital storage device designed primarily to store and play audio, video, or photographic files. However, a portable media player can also store other digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

d. GPS: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records of the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

e. PDA: A personal digital assistant, or "PDA," is a handheld electronic device used for storing data (such as names, addresses, appointments or notes) and utilizing computer programs. Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail. PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can store any digital data. Most PDAs run computer software, giving them many of the same capabilities as personal computers. For example, PDA users can work with word-processing documents, spreadsheets, and presentations. PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

f. Tablet: A tablet is a mobile computer, typically larger than a wireless telephone yet smaller than a notebook that is primarily operated by touching the screen. Tablets function as wireless communication devices and can be used to access the Internet through cellular networks, 802.11 "wi-fi" networks, or otherwise. Tablets typically contain programs called apps, which, like programs on a personal computer, perform different functions and save data associated with those functions. Apps can, for example, permit accessing the Web, sending and receiving e-mail, and participating in Internet social networks.

g. IP Address: An Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet. An IP address is a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178).

Every computer attached to the Internet computer must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination. Most Internet service providers control a range of IP addresses. Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

h. Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

6. Based on my training, experience, and research, I believe that the DEVICE has the capability to serve as a wireless telephone, digital camera, portable media player, GPS navigation device, Tablet, and PDA. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the DEVICE.

## IDENTIFICATION OF THE DEVICE TO BE EXAMINED

7. The property to be searched is a cellular telephone identified as an "LG" model, black in color, contained within a black and purple phone case & seized on December 20, 2017 from Kevin MADRID, hereinafter the "DEVICE," more particularly described in Attachment A.

8. The applied-for warrant would authorize a forensic examination of the DEVICE for the purpose of identifying electronically stored data particularly described in Attachment B.

## PROBABLE CAUSE

9. Based on my training and experience, and conversations with other Agents and Investigators, I know the following regarding those involved in the distribution of controlled substances in violation of 21 U.S.C. § 841 ("Drug Trafficking") and conspiracy in violation of 21 U.S.C. § 846:

   a. Drug traffickers often use telephones, cellular telephones, pagers, and other communication devices, i.e. "smartphones" and other similar devices, to facilitate their sales, track and monitor drug shipments, communicate with subordinates and other associates, arrange monetary transfers, and avoid police detection. Drug distribution is an ongoing practice, so these communications may take place at any time.

   b. Drug dealers also use answering machines, voice mail, and text messaging to receive, transmit, and store messages to and from customers, suppliers, subordinates, and other associates, involved in the distribution of controlled substances.

   c. Drug dealers often use cameras to capture a moment in the history of their drug transactions. For example, they may photograph themselves or others next to large amounts of drugs and or money, to show others the quantity of drugs which they can deliver. These photographs may also show their business associates with

large amounts of drugs and money. These photographs are often stored in the electronic memory, SIM cards, or other storage devices of the cellular telephones.

10. The DEA, together with other law enforcement agencies, has been conducting a long-term investigation of individuals, headed by Kevin MADRID (hereinafter referred to as MADRID), who have conspired to distribute, controlled substances throughout New Mexico.

11. Earlier this year, the Santa Fe Police Department (SFPD) arrested an individual who distributed large quantities of crack cocaine for MADRID; the individual agreed to cooperate and is now a confidential informant (hereinafter referred to as CI) for the SFPD.

12. CI agreed to purchase crack cocaine from MADRID at law enforcement agent's request. However, before law enforcement agents had prepared for a controlled buy, CI reported that MADRID unexpectedly visited CI's residence on or about October 26 and delivered approximately 750 grams of cocaine base. MADRID "fronted" or delivered the cocaine base without immediate payment but with the expectation that CI would sell the drug and pay MADRID with the proceeds. CI instead turned the cocaine base over to law enforcement agents.

13. Law enforcement agents believe that MADRID traveled to Mexico and remained there for much of November 2017. Upon his return to Santa Fe in late November 2017, MADRID contacted CI seeking payment for the cocaine base that he supplied to CI in October.

14. On or about November 28, 2017, CI received several text messages from a cellular telephone, assigned call number: (505) 469-9172 (hereinafter referred to TELEPHONE 1). In those test messages, MADRID or another user of that telephone attempted to get CI's attention. CI replied on November 30, 2017, and invited the user of TELEPHONE 1 over to the

CI's residence. Approximately thirty minutes later, law enforcement agents observed MADRID and an unidentified male associate arrive at the CI's residence.

15. MADRID visited the CI's residence to collect the money that CI owed him for the 750 grams of cocaine base that MADRID had previously supplied to CI. CI told MADRID that he had only sold a portion of the drugs and that he still had one-half of a brick or kilogram. Following a discussion concerning CI's obligation to sell the remaining cocaine base to pay the drug debt, CI made a partial payment to MADRID (using money supplied by law enforcement). CI told MADRID that he would try to sell the cocaine base and pay the debt.

16. In the video recording of that meeting, MADRID is seen handling and possibly typing text messages into a cellular telephone. Before leaving, MADRID instructed the CI to text him at TELEPHONE 1 again the following week with a specific phrase, if and when the CI could provide another payment.

17. On December 7, 2017, the CI texted the phrase and location to the TELEPHONE 1. Approximately thirty minutes later, law enforcement observed MADRID arrive alone at the CI's residence to collect money. During this meeting, MADRID and CI again discussed the CI's drug debt as well as drug trafficking methods and techniques. After collecting partial payment of the drug debt, MADRID again instructed CI to send a text to TELEPHONE 1 when CI has more money to pay MADRID.

18. On December 20, 2017, a warrant was issued for MADRID's arrest; following the return of a two count indictment charging MADRID with violations of 21 U.S.C. § 841(a)(1) and (b)(1)(A): distribution of 280 grams and more of cocaine base and conspiracy in violation of 21 U.S.C. § 846. On that same date Agents arrested MADRID. The DEVICE was

in MADRID's possession at the time of his arrest. Since MADRID's arrest the DEVICE has been in the custody of the DEA.

19. Affiant is applying for a search warrant for the DEVICE, because Affiant believes that there is probable cause that the DEVICE contains evidence of a crime(s). According to the CI and other associates of MADRID, MADRID frequently changes his telephone and obtains or subscribes to cellular services under aliases or names of other persons. TELEPHONE 1, that MADRID has been using, is subscribed to Mitchell King, 131 Peak Place, Unit 7, Santa Fe, NM 87506. While Agents are presently uncertain whether TELEPHONE 1 and the DEVICE are same, there is cause to believe that the DEVICE, found in the possession of MADRID at the time of his arrest, contains evidence of MADRID's criminal activities."

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

20. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

21. *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described in the warrant, but also forensic evidence that establishes how the DEVICE was used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the DEVICE because:

   a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

b. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

d. The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

22. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the DEVICE consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of

11

the device to human inspection in order to determine whether it is evidence described by the warrant.

23.   *Manner of execution.*  Because the DEVICE is in DEA custody Agents are only requesting the authority to examine (search) the phone as described in the above paragraph.

## CONCLUSION

24.   Based upon the facts set forth in this Affidavit, there is probable cause to believe that the contraband, property, evidence, fruits and instrumentalities of violations of Title 21, United States Code, Section 841, distribution of a controlled substance, and Section 846, conspiracy, more fully described in Attachment B of this Affidavit, are located on the DEVICE described in Attachment A.  I respectfully request that a search warrant for the DEVICE be issued, authorizing any Agent with the DEA or technical analyst with the DEA, with proper assistance, to search the DEVICE for the items described in Attachment B.  Proper assistance to search the DEVICE will include, but not be limited to, the cellular telephone service provider unlocking the subject telephone to facilitate the execution of the search warrant.  I declare under penalty of perjury that the statements above are true and correct to the best of my knowledge, information and belief. This Affidavit is in support of the requested search warrant and was reviewed and approved by Assistant United States Attorney Timothy Vasquez.

Gregory Nienow
DEA Special Agent

Subscribed and sworn to before me
on January 8, 2018:

Jerry Ritter
United States Magistrate Judge



## ATTACHMENT A

## DESCRIPTION OF PROPERTY TO BE SEARCHED AND SEIZED

This warrant applies to the following DEVICE:

A cellular telephone further identified as an "LG" model, black in color, contained within a purple & black phone case & seized on December 20, 2017 from Kevin MADRID. The DEVICE has been in DEA custody since its seizure on December 20, 2017.

This warrant authorizes the search of the content and records by forensic examination of the DEVICE for the purpose of identifying electronically stored information described in Attachment B.



## ATTACHMENT B

## ITEM TO BE SEARCHED

The following materials, which constitute evidence of the commission of a criminal offense, contraband, the fruits of crime, or property designed or intended for use or which is or has been used as the means of committing a criminal offense, namely violations of Title 21, United States Code, Section 841, distribution of a controlled substance, and Section 846, conspiracy:

1. The DEVICE itself: Cellular telephone further identified as an "LG" model, black in color, contained within a purple & black phone case & seized on December 20, 2017 from Kevin MADRID. The DEVICE has been in DEA custody since its seizure on December 20, 2017, as described in Attachment A.

2. Content and records on the DEVICE described in Attachment A including:

   a. lists of customers and related identifying information (including names, addresses, telephone numbers, emails, social networks, or any other identifying information);

   b. stored communications or media that identifies types, amounts, and prices of controlled substances as well as dates, places, and amounts of specific transactions;

   c. stored communications related to sources of drugs (including names, addresses, phone numbers, emails, social networks, or any other identifying information);

    d. information related to MADRID and others involved in illegal drug distribution(including names, addresses, phone numbers, emails, social networks, or any other identifying information);

    e. names, addresses, phone numbers, emails, social networks, or any other identifying information; and

    f. information recording MADRID's schedule or travel relating to illegal drug distribution.

3. Evidence of users attribution showing who used or owned the DEVICE at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.